Good morning, Your Honor. Good morning. May it please the Court, my name is Howard Phillips and I represent Mr. Douglas Spink. My client sincerely appreciates the Court taking the time to listen to this unusual matter. And he also wanted me to note that, well I want to personally note that I've known the trial judge for a long time, even before he was on the bench, and I respect him and have always admired him. However, I believe that in this case, he is an heir. This is what you always know, with all due respect. With all due respect to my friend, the trial judge. But it's true, Your Honor, I really think that. But basically, Your Honor, our case resolves around my client. I'd like to speak to the Court about how my client was sentenced, the sentence itself as well as the conditions. And I'll try to move quickly through it, given the briefness of time. My client was, we opined that his guideline range was four to 12 months, that is the government as well as the defense. And he was sentenced to 36 months, or three times the guideline range, and it was his first time, first time violator offense. And I, and my client wishes to challenge that. First, Mr. Spink challenges the sentence, that his sentence was procedurally unreasonable. Second, that it was substantively unreasonable. And third, that there was insufficient by the record made by the Court to support the numerous special conditions, which should have been narrowly limited with no greater deprivation to accomplish the permissible sentencing factors. Well, I guess, though, you have to look at these from, I mean, we see a lot of violations of probation, and you have to look at them in all the contexts. Now, sometimes like a failure, you know, say like a failure to not report to your probation officer, can mean one thing when a person has a certain type of offense, and it means a whole other thing when they're a sex registrant. You know, that's, it takes on a whole other thing. Here, you know, when you look at this, it appears that your client got quite the gift on his first sentence, way below, you know, the guidelines and, you know, everything as far as that goes. And these do not appear to be minimal violations. That's the, you know, these aren't just, oh, hey, you forgot to report to your probation officer, that, you know, there's a lot of evidence. So, you know, maybe you need to address that. Well, if I may speak to that, Your Honor, my client, it was a drug case. It wasn't a sex case, by the way, his initial underlying case. You have to obey all laws still. But what the court said in his, I guess I would ask the court to look at his transcript of what the judge actually said. Well, it's sort of like, okay, you're on probation for a drug case, and then the new things are allegations that you committed a lewd act with a child. Does that mean that I can't violate your probation? He didn't commit a lewd act with a child. That's the problem, Your Honor. No, I know, but what I'm saying is, you know, you've got the animal cruelty statute. You also have, there are allegations of substantial violations of his financial records, which is what is relevant. That's a technical violation. Those are technical violations, Your Honor. And, in fact, the violation which we, the crime that he would have been committed, charged with or convicted of, if he had been charged in state court, was a misdemeanor, and the co-defendant got 30 days in that matter. To go directly back to the issue of whether he got a big break, he got a big break, but that was a bargain between the two parties, Your Honor. The government got a big break as well. The court noted that my client would have gotten a 10-year sentence had he not done the 5K, and that wasn't true because there were five, there was safety valve, face safety valve, profit eligibility, which could have helped him avoid the mandatory minimum. So the fact that that case was, both the parties benefited by that, the government did not have to pursue this huge case. But why isn't a financial violation of a convicted drug trafficker a serious violation of probation? It's a technical violation, Your Honor. I understand what you're saying about the financial. There was no financial. The bottom line here in this case is that the government is claiming that my client was present when another man was involved with sexual acts for the dog. That's the bottom line, and the other gentleman was not. And so that's the context of what we're talking about. We're talking about basically bestiality and zoophilia, and it goes a lot to the case. If I can maybe return to my presentation of how we asked the court to address the issues. Well, you can't be upset with us for taking you off point when we have questions. Oh, I'm never upset with the court, Your Honor. Never. Sorry. Always with due respect. Totally. But my client's first point, Your Honor, this court, I believe you were, Your Honor, also was on the bench, decided the matter of Canby. And in Canby, this court laid out a roadmap, a checklist of, well, what sentencing courts should do post-Booker. And my client's entire arguments regarding the proceduralness, the substantive irresponsibility, and the issues related to special conditions all track Canby. And we'd asked the court to use the rulings that this court has made in Canby and other cases following that to make a decision and also look at what the court actually said. A procedural, a case, a sentencing is procedurally irresponsible, procedurally, I'm sorry, procedurally unreasonable and reviewed for abuse of discretion if the court, one, fails to calculate, two, erroneously calculates the guideline range, and three, fails to explain why the guideline range is sufficient. In this case, clearly the court, and I think the government acknowledges, the court failed to calculate independently the guideline range. But moreover, in our view, the court also failed to explain why the guideline range was insufficient. And we'd asked the court to go right to the transcript to make that determination. So does the government say that this should be reversed? You said the government conceded that the court didn't explain the reasons. Does the government say that this case should be reversed? I don't believe so, Your Honor. Well, I think that counsel said the government acknowledged that the court didn't say the guideline range. And if I misspoke, Your Honor, I apologize. No, I think that's what you said. That was my clear intent. I think that's what you said, and that's true. Now let's assume that even though the court didn't specifically lay it out, it seems clear from the record the court understood what the guideline range was. And it was in the report. It was never contested by the government. Everybody was operating on the same premise. So that leads me to two questions. One is, let's assume the court knew what the guideline range was. To what degree does it then have to explain why it is tripling, in effect, the guideline range? And second, based on some of the comments about being born on a farm and those sort of things, is the court, in effect, putting special emphasis under the, you know, in contravention of our case law, putting undue emphasis on this underlying crime of zoophilia? Is that how you say it? Zoophilia, Your Honor. Zoophilia. That's exactly my point, Your Honor, and I believe so. And the court's explanation is in my transcript, was supervised release and the remaining unsupervised release is a privilege, the intentional circumvention and violation of these conditions. They are not laws, they're just conditions set by this court, in my opinion, merit severe consequences, and that's all. These violations merit severe consequences. There was no definition of why the guidelines were insufficient. And I think the court is saying, you know, I've watched this over time, and I look at this case and this is a severe breach of trust. I mean, that's what the court is implying, and he says, and that has severe consequences. So do we have case law that says that's not enough to say? That this is a breach of trust, Your Honor? That just saying this is their severe consequences and, therefore, I impose. I guess the bottom line, Your Honor, is could you discern what the court's intent was with that language? And that's the issue. The language has to be sufficient to allow this court to make appellate review of what the court's intent. If you have to query of what the court's intent was, that means the court did not fulfill can be in the case law that provides that. He needs to provide this court with that information. One of the most important things in this case, Your Honor, that my client wishes me to bring to the court is, in fact, what happened is my client was tried and sentenced without a jury and without a judge. The government, the state, elected not to try Mr. Stink for animal abuse and to save money and allow the federal government to do it. The court, in fact, made a finding that he punished my client for the conduct that occurred on his farm. Punishment is not what supervised release is about. Supervised release should be a sanction for breach of trust. So even though there's language that talks about it. I thought that was a little ambiguous because he says, you know, I'm not punishing you for your beliefs because we have different beliefs about animals and punishing you for your conduct. So I couldn't tell if that meant your conduct and your violations or your conduct of what you're doing with these animals. I think it was pretty clear, Your Honor, given the language you talk about, I was born on a farm, that the conduct that he found repulsive, that most people find repulsive, was the driver of why my client is sitting in prison right now for three years as opposed to 30 days or four months or 12 months. I'd say reserve the rest of my time, Your Honor. Six seconds left. Thank you. Good morning, Honors. May it please the Court, Stephen Massad on behalf of the United States. The government here asks that this Court affirm the decision of the district court in this case. Before jumping to the meat of the argument, I wanted to address a couple points that Mr. Phillips raised in his opening argument. First of all, the animal cruelty statute under Washington law is not a misdemeanor. It's a class C felony, and that's clear from the statute. But this is aside from the point, because as the government and the Court, I think, made clear at the sentencing hearing below, this is a supervised release matter. As Judge Callahan said, these are not mere technical violations. The Court was confronted with an individual who engaged in systematic disregard and disrespect for the Court's authority and the supervision of his probation officer. It is complicated by the fact that the violations were so pervasive, and it's further complicated by the fact that the violations involved criminal conduct that in this case happens to be of the salacious nature. How did the – okay, he wasn't supposed to associate with felons, and the way that this came to the Court's attention was, I think, a prison official in Tennessee said that the defendant was having – and then that opened up the whole other thing. And then there seemed to be indications on the financial records. Do those factor into the ultimate sentence, or how does this all work? I actually believe that that is what drove the sentence. The sentence was about the overall – the totality of the circumstances, the overall breach of trust, the fact that Mr. Spink was living a prohibited lifestyle under a cloak of secrecy and deception, where he hid his behavior from the probation office. And, again, it did involve criminal conduct that – Yeah, but then let's get to the heart of the matter, because that all may be true, but we really have a very unusual record here where he talks about his distaste with what was happening, or potentially with the zoophilia or the bestiality, et cetera. And he – all he does is say what you did has severe consequences, but he nowhere really makes a foundational statement that says, you know, I recognize the guideline was only 4 to 10, but this is so serious what you've done and what you've been doing here and doing it under a cloak of darkness, under the cloak of your computer, et cetera, et cetera. So I need to, you know, triple – more than triple that. I mean, it is really quite – I mean, it comes under a fair tack of substantive unreasonableness, but we would be more inclined, of course, to support that if the district court told us really why you needed to go this far above the guidelines. So I'm asking you, I guess, where we should look in the district court record to uphold this kind of a sentence. This above-guideline sentence. Your Honor, I would point to – I believe it begins on page 227 in the record. And I think the judge's colloquy has to be viewed in its totality. While sentencing Mr. Spink, Judge Martinez articulated that he was contemplating the maximum sentence, sentencing Mr. Spink to five years, because he believes that given Mr. Spink's conduct that he understood the rules, knew the rules, and did everything that he could to circumvent those rules. Also, coupled with the sophistication that Mr. Spink has in relation to computers, as well as his knowledge of corporate forms and how he used that specialized knowledge to further his scheme of deception, the court said that it was contemplating five years, the maximum revocation period given the substantial downward departure that he received for his underlying crime of possessing 150 kilos of cocaine. So to answer Your Honor's question, I believe the record is clear that the judge contemplated the whole situation. While I respect Mr. Phillips' position, this case is not about zoophilia. Again, it's clouded by the fact that, yes, there is the ewe factor to what Mr. Spink and Mr. Clark were doing on his property, but if we change the hypothetical and the probation office and the U.S. Marshal Service comes to Mr. Spink's property on that morning in April and they find that Mr. Spink's operating a dogfighting ring, I think we're in the same situation and the same sentence would resolve. So, Your Honor, turning to the sentence, Mr. Phillips makes mention that this is procedurally unreasonable, and again, this is reviewed under the plain error standard because there was no objection in the court below. And as I just mentioned, Your Honor, the court did make a sufficient record why that this sentence should be upheld. Mr. Spink is arguably unsupervisable. And Judge Martinez said that he would, while contemplating a five-year sentence, he settled on a three-year sentence with two years of supervised release with heightened conditions that the probation office and the court determined were reasonably necessary to serve the goals of sentencing. Now, again, in order to look at this sentence, I think it's appropriate to sort of survey the field and get the lay of the land. Mr. Spink was sentenced to three years in prison after being caught red-handed with 150,000 kilograms of cocaine, which is worth over $34 million in street value. And it was Mr. Spink's defiance and his disregard for the trust relationship that he owed to the court that drove the sentence here, and I think the record's  And the guidelines here contemplate an upward departure when the underlying sentence was a result of a significant downward departure, which there is no question, three years for what Mr. Spink pled guilty to is a substantial downward departure. Now, put in context, even with this 36-month sentence, at the end of the day, Mr. Spink will have served prison time of only about half, half of the 10-year mandatory minimum that is imposed upon somebody caught with five kilos of cocaine. Here stands an individual who was caught red-handed with 150 kilos of cocaine, and he got a break, a huge break. And what does he do? The day he walks out of prison on supervised release, he basically thumbs his nose at that opportunity, and he squandered it. And that's what drove the sentence here, Your Honors. What about the Internet conditions where, in this particular case, the crime, you know, this underlying conduct with respect to the Washington statute isn't really one that's Internet-based? So do we have precedent for saying, well, even though that crime isn't Internet-based, I'm going to impose these Internet-based restrictions on the defendant? Absolutely, Your Honor. And I think in this case's prior decisions in the United States v. Sales and the United States v. Barsoomian, they contemplate Internet conditions. Granted, both of those cases they — Those were Internet-based crimes. No, no, no. Sales was, though, wasn't it? Sales was a counterfeiting case, and this Court, I believe it was an opinion penned by Judge Betty Fletcher, they said because the crime itself did not involve the Internet, nor did Mr. Sales, did his history involve any Internet use or any wrongdoing via the Internet or computers, aside from the counterfeiting offense, that those conditions were too restrictive and they weren't justified here. I think we can distinguish our case on two grounds. First, our condition, our conditions are, I think, much, much narrower than what was struck down in Sales. And second, we're dealing with an individual, Mr. Spink, who has used computers to deceive. In fact, it's even worse than using a computer to commit an underlying offense when you use a computer to deceive your probation officer when you know you're being watched by the court. I believe it's even more aggravating in this case. Well, so in this you have the website for the animal cruelty stuff, right? Right, Your Honor. But what was the evidence that was presented that had to do with, like, transfer of money? The transfer of money itself was just, like, Western Union wires. What we need to look at here is that Mr. Spink was, the computer restrictions are not so much based on the underlying crime. It's more based on the deception in general. And as the standard is here, the district court has deference or has the freedom to impose any conditions reasonably related to the goals of sentencing, taking into account, which is very important here, taking into account the history and characteristics of this particular defendant. And this particular defendant was operating an Internet-based company that was generating money for himself that he did not report to the probation office. The business itself dealt with disseminating images that are, depict events that are illegal under Washington law, like many other states. And he used and himself developed encryption software. And I think it's important also to note that, two points, Your Honor, that in the last Hope speech where his unauthorized travel to New York, it wasn't a convention for a charity or small business owners. It was a convention for hackers. These are the people that he associated with when he was supposed to be on his best behavior. I'll also add, Your Honor, and I know I'm out of time, so just briefly, that his computers that were seized were heavily encrypted. And Mr. Spink refused his probation's, the probation officer, access to those computers. Now, that in and of itself could be considered a violation. And I think the fact that we can't get into those computers, I mean, we can only make a negative inference from this. Thank you. We'll give you ten. Thank you very much, Your Honor. First of all, Your Honor, there was no systematic disregard of the court. What happened here was the U.S. probation for 18 months totally neglected to even see my client or visit him. He wasn't hiding. That was the U.S. probation. Now my client is suffering because U.S. probation failed to do their job. Secondly, prohibited lifestyle, zoophilia is not a prohibited lifestyle. It may be to the government, but it's not against the law. All the websites that they found on my client's computer are not child pornography, Your Honor. This is not child pornography. And all the conditions that go to child pornography are inappropriate. Thank you. Okay. Thank you. The case just argued is submitted for decision. The last case, United States v. Gutierrez-Arredondo, is submitted on the briefs, and it is so ordered. That concludes the court's calendar for this morning, and the court stands adjourned.
judges: Schroeder, McKeown, Callahan